**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CENTURY 21 REAL ESTATE LLC, a Delaware Limited Liability Company, <br><br> Plaintiff, <br><br> v. <br><br> RAMROM ENTERPRISES, a Nevada corporation doing business as CENTURY 21 VISION REALTY; and RUEBEN ZAMUDIO, an individual, <br><br> Defendants. <br> _____/ | 1:14-cv-00788-AWI-JLT <br><br> **ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |

**I. INTRODUCTION**

Plaintiff Century 21 Real Estate LLC ("Plaintiff") has filed a motion seeking to enjoin Defendants Ramrom Enterprises, Century 21 Vision Realty, and Ruben Zamudio (collectively "Defendants") from continuing the unauthorized use of its recognized word and design trademarks in violation of the Lanham Act. Defendants appear to have been properly served but have filed no opposition to Plaintiff's motion. For the following reasons, Plaintiff's motion for preliminary injunction will be granted.

1

## II. BACKGROUND[1]

Plaintiff is a real estate brokerage franchisor. Points and Authorities in Support of Plaintiff's Motion for Preliminary Injunction ("MPI") at p. 6; Declaration of Marc Fischman ("Fischman Decl.") at ¶ 3. Plaintiff has registered multiple marks on the Principal Register of the United States Patent and Trademark Office, including Registration No. 1063488 for word mark "Century 21®," and Registration Nos. 108540, 2027670, and 1263774 for design marks all bearing the words "Century 21." MPI. at pp. 6-7; Fischman Decl. at ¶ 4. Franchisees are granted non-exclusive licenses to utilize Century 21® marks. Defendant Ruben Zamudio, as owner of Ramrom Enterprises, entered into a franchise agreement with Plaintiff for a ten year term with an "[o]pening [d]ate" of June 1, 2010. Compl. at ¶ 16; MPI at p. 7. Defendants agreed to pay fees at a minimum of eight percent of all gross revenues to Century 21 in exchange for the non-exclusive use of its marks and real estate system. Compl. at ¶ 17; MPI at p. 7. The agreement specified that, upon termination of the agreement, Defendants would be obliged to immediately cease using Century 21® marks, names, and any similar designation or mark. Compl. at ¶ 20; MPI at p. 7-8. In the event of termination or breach of the agreement, Defendants were also obliged discontinue all advertising using Century 21® marks, remove all advertising claiming affiliation with Century 21®, and advise all clients that they were no longer associated with Century 21. Compl. at ¶ 20; MPI at p. 8.

Defendants failed to pay the fees required by the franchise agreement. Compl. at ¶ 22; MPI at p. 8. Plaintiff notified Defendants of the default and gave them an opportunity to cure. Compl. at ¶ 22. Defendants failed to cure the default. Compl. at ¶ 22. On November 1, 2013, Plaintiff terminated the franchise agreement and demanded that Defendants cease use of Century 21® Marks. Compl. at ¶¶ 23, 27; Declaration of Aaron Rudin ("Rudin Decl."), Exhibit A. To date, Defendants or their agents continue to use Century 21® marks without authorization. Compl. at ¶¶ 28-29; MPI at p. 9; *See* Rudin Decl. at ¶¶ 3-13.

---

[1] Since Defendants have not filed any papers in this matter, this section relies on Plaintiff's pleadings.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 65(a) governs requests for preliminary injunctions. "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.,* 555 U.S. 7, 20 (2008). "A preliminary injunction is an extraordinary remedy never awarded as of right. In each case, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.' 'In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction.'" *Winter,* 555 U.S. at 24 (internal citations omitted). The Ninth Circuit has adopted a sliding scale approach to preliminary injunctions in which an injunction may issue "where the likelihood of success is such that 'serious questions going to the merits were raised and the balance of hardships tips sharply in [plaintiffs] favor.'" *Alliance for the Wild Rockies v. Cottrell,* 632 F.3d 1127, 1131 (9th Cir. 2011) (citing *Clear Channel Outdoor, Inc. v. City of Los Angeles,* 340 F.3d 810, 813 (9th Cir. 2000)).

### IV. DISCUSSION

**A. Likelihood of Success on the Merits**

To obtain a preliminary injunction, Plaintiff must establish that it is likely to prevail on its trademark infringement claim. A trademark is "any word, name, symbol, or device, or any combination thereof ... used by a person ... to identify and distinguish his or her goods." 15 U.S.C. § 1127. "To prevail on a claim of trademark infringement under the Lanham Act, 15 U.S.C. § 1114, a party 'must prove: (1) that it has a protectable ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion.'" *Network Automation, Inc. v. Adv. Sys. Concepts, Inc.,* 638 F.3d 1137, 1144 (9th Cir.2011) (quoting *Dep't of Parks & Recreation v. Bazaar Del Mundo, Inc.,* 448 F.3d 1118, 1124 (9th Cir.2006)).

*i. Protectable Ownership Interest*

Three ways exist for a party to establish a protectable interest "(1) it has a federally registered mark in goods or services; (2) its mark is descriptive but has acquired a secondary meaning in the market; or (3) it has a suggestive mark, which is inherently distinctive and protectable." *Applied Information Sciences Corp. v. eBay, Inc.,* 511 F.3d 966,969 (9th Cir.2007). A plaintiff's federal registration of a trademark is prima facie evidence of an ownership interest, but a defendant may rebut the presumption by proving their own prior use of the mark in commerce. *See Dep't of Parks & Recreation,* 448 F.3d at 1124; 15 U.S.C. §§ 1057(b), 1115(a).

Plaintiff has made a judicially noticeable showing of federal registration of its trademarks; United States Trademark Registration Nos. 1063488, 1085040, 2027670, and 1263774. *See* Fischman Decl. at ¶ 4, Exhibit A (Doc. 8-2). Defendant had made no attempt to rebut the presumption created by the federal registration. Accordingly, Plaintiff has demonstrated a protectable ownership interest in the word mark "Century 21" and the multiple design variations bearing those words.

*ii. Likelihood of Consumer Confusion*

The Ninth Circuit employs a flexible multi-factor test – commonly referred to as the *Sleekcraft* factors - to gauge the likelihood of confusion caused by an allegedly infringing mark. *See Network Automation, Inc.,* 638 F.3d at 1145. Normally, eight factors are considered: "[1] strength of the mark; [2] proximity of the goods [or services]; [3] similarity of the marks; [4] evidence of actual confusion; [5] marketing channels used; [6] type of goods [or services] and the degree of care likely to be exercised by the [customer]; [7] defendant's intent in selecting the mark; and [8] likelihood of expansion of the product lines." *Id.* at 1145 (citing *AMF, Inc. v. Sleekcraft Boats,* 599 F.2d 341, 348–49 (9th Cir.1979)). However, it is important to note that the list is not exhaustive, that no factors are dispositive, and that the relative importance of each factor will vary from case to case. *See Brookfield Commc'ns., Inc.,* 174 F.3d at 1054. The *Sleekcraft* factors are intended as an adaptable proxy for consumer confusion, not a rote checklist. *See, e.g., Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.,* 618 F.3d 1025, 1030 (9th Cir.2010) ("This eight-factor analysis is 'pliant,' illustrative rather than

exhaustive, and best understood as simply providing helpful guideposts."). Plaintiff alleges that all of the *Sleekcraft* factors demonstrate a likelihood of confusion. None of the defendant have filed an opposition, thus there is no allegation that there is no likelihood of confusion. Nonetheless, this Court will apply the *Sleekcraft* factors.

1. Strength of the Marks

At the preliminary injunction stage, a mark's strength is normally gauged by its conceptual strength. *Network Automation, Inc.,* 638 F.3d at 1149–50. "[C]onceptual strength depends largely on the obviousness of its connection to the good or service to which it refers." *Id.* at 1149. The Century 21® marks have been recognized by the Ninth Circuit as being strong for purposes of the Lanham Act. *See Century 21 Real Estate. Corp. v. Sandlin,* 846 F.2d 1175, 1179 (9th Cir. 1998.); *see also Century 21 Real Estate LLC v. Ed/Var Inc.*, 2014 WL 3378278, *6 (N.D. Cal. 2014) (confirming that Century 21® marks are still "indisputably strong."); *Century 21 Real Estate LLC v. All Professional Realty, Inc.*, 2011 WL 221651, *10 (E.D. Cal. 2011). In addition to the mark strength already recognized by other courts in this Circuit, Plaintiff has – in declaration form - provided evidence that "Century 21 has invested much time, effort and millions of dollars in advertising and promotion the goods and services offered under the Century 21® [m]arks and Century 21® brand such that the Century 21® [m]arks have become well recognized. This evidence, especially when uncontested by Defendants, is sufficient to permit this Court to find that Century 21's trademarks are strong. This factor points toward a finding of customer confusion.

2. Proximity of the Services

Defendants use Century 21's trademarks in connection with real estate brokerage services, the same services offered by Century 21 franchisees. Rudin Decl. at ¶¶ 3-13; Fischman Decl. at ¶¶ 3, 18. This factor points toward a finding of customer confusion.

3. Similarity of the Marks

Defendants began using Plaintiff's word and design marks while Defendant Ramrom was a franchisee of Century 21. Defendants continued using the same marks after termination of the franchise agreement. The design emblem, used by Defendants and attached by Plaintiff as

exhibits, bears the same design as the Century 21® mark Registration No. 1085040, with the addition of the words "New Vision" centered below the Century 21® mark. Rudin Decl. at Exhibits B, C, H. Defendants also continue to use Century 21® word mark "Century 21," followed by the words, "New Vision." Rudin Decl. at Exhibits B-N.  Defendants have used Plaintiff's marks in whole. This factor points toward a finding of customer confusion.

    4. <u>Marketing Channels Used</u>

Defendants and Plaintiff use the same marketing channels. Namely, both use "external signs, yard signs, business cards as well as local listings and the internet to market their services. Fischman Decl. ¶¶3-6, 17-18, Exhibit H; Rudin Decl. ¶¶ 3-13, Exhibits B-N. This factor points toward a finding of customer confusion.

    5. <u>Defendant's Intent in Selecting the Mark</u>

Defendants continued using Plaintiff's marks after the license to do so was terminated. It is reasonable to infer that Defendants intended to capitalize on the Century 21® marks through the impermissible use. *Century 21 Real Estate LLC v. Ed/Var Inc.,* 2014 WL 3378278, at *6 (citing *Entrepreneur Media v. Smith,* 279 F.3d 1135, 1148 (9th Cir. 2002) ("Where an alleged infringer chooses a mark he knows to be similar to another, one can infer an intent to confuse.")). This factor points toward a finding of customer confusion.

    6. <u>Actual Confusion, Types of Services and Degree of Care likely to be Exercised by Customer, and Likelihood of Expansion of the Product Lines</u>

Plaintiff has not submitted any evidence of actual confusion, degree of care likely to be exercised by the customer or likelihood of expansion of the product lines. Plaintiff's "failure to *prove* instances of actual confusion is *not* dispositive … because actual confusion is hard to prove; difficulties in gathering evidence of actual confusion make its absence generally unnoteworthy." *Brookfield Communications, Inc. v. West Coast Entertainment Corp*., 174 F.3d 1036, 1050 (9th Cir. 1999) (citing *Eclipse Associates Ltd. v. Data Gen. Corp.,* 894 F.2d 1114, 1118–19 (9th Cir.1990); *Sleekcraft,* 599 F.2d at 353.) Although no evidence has been submitted on this issue, Plaintiff has argued that "it is reasonable to infer that in light of Defendants' continued unauthorized use of Century 21® [m]arks in connection with their real estate

brokerage business, that consumer and other real estate brokers or agents, regardless of their level of sophistication, have been misled into believing that Defendants are operating an authorized Century 21 franchise." Since Defendants have refused to de-identify from Century 21's mark, it is not unreasonable to conclude that its present and those who see their listings will actually believe that they are associated with Century 21.

Further, Plaintiff has argued that the factor relating to expansion of product line is inapplicable to this situation because the parties already offer the same services. The Court agrees.

These factors – in the aggregate – have little impact on this determination of customer confusion.

7. Conclusion

The applicable *Sleekcraft* factors point in favor of potential customer confusion and Defendant has made no showing to the contrary. Accordingly, Plaintiff has demonstrated a likelihood of customer confusion.

**B. Likelihood of Irreparable Harm in Absence of Granting Preliminary Injunction**

Plaintiff has alleged that Defendants' past and continued misrepresentations and infringement – if not enjoined – will result in irreparable harm, such as harm to plaintiff's goodwill, for which remedies at law are inadequate. (Compl. ¶¶ 15, 32, 39-40, 46.) *See Rent–A–Center, Inc. v. Canyon Television & Appliance Rental, Inc.,* 944 F.2d 597, 603 (9th Cir.1991) ("[W]e have also recognized that intangible injuries, such as damage to ongoing recruitment efforts and goodwill, qualify as irreparable harm."); *Century 21 Real Estate Corp. v. Sandlin,* 846 F.2d at 1180 ("Injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement."); *Wetzel's Pretzels, LLC v. Johnson,* 797 F.Supp.2d 1020, 1028 (C.D. Cal. 2011) (finding irreparable harm where a former franchisee continues unauthorized use of franchisor's marks).

Plaintiff is likely to suffer irreparable harm in the absence of a preliminary injunction.

**C. Balance of Equities**

The balance of hardships tips strongly in plaintiff's favor. In contrast to the irreparable harm that Plaintiff would suffer by Defendants' continued misrepresentations and infringement, Defendants would not be harmed by an injunction which would require them to discontinue unlawful conduct.

**D. The Public Interest**

"In the trademark context, courts often define the public interest at stake as the right of the public not to be deceived or confused." *7-Eleven, Inc. v. Dhaliwal*, 2012 WL 5880462, *7 (E.D. Cal. 2012) (quoting *CytoSport, Inc. v. Vital Pharms., Inc.,* 617 F.Supp.2d 1051, 1081 (E.D. Cal. 2009)). Granting Plaintiff's requested injunction would serve that purpose. Thus, granting the injunction would be in the public interest.

**E. Bond**

Under Federal Rule of Civil Procedure 65(c), the court may grant a preliminary injunction "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." The Court has wide discretion to set any amount for the bond. *Boldface Licensing & Branding v. By Lee Tillett, Inc.*, 940 F. Supp. 2d 1178, 1200 (C.D. Cal. 2013) (citing *GoTo.com v. Walt Disney Co.,* 202 F.3d 1199, 1211 (9th Cir. 2000)). Defendants have not answered and Plaintiff appears highly likely to succeed on the merits. The Court is therefore inclined to waive the requirement that Plaintiff post a bond, noting that the likelihood of an injunction being wrongfully entered is very low.

**F. Conclusion**

Plaintiff has shown a likelihood of success on the merits, irreparable harm in the absence of an injunction, that the balance of equities tilt in its favor and that the public interest would not be disserved by an injunction. Accordingly, this Court will grant Plaintiff's motion for preliminary injunction.[2]

---

[2] Plaintiff's proposed order has crafted an injunction that would enjoin conduct related to breach of the franchise agreement rather than a violation of its trademarks; e.g. restraining defendant from using instructional manuals that were delivered pursuant to the franchise agreement. Further, Plaintiff seeks to enjoin Defendants from "doing

## V. ORDER

Based on the foregoing, IT IS HEREBY ORDERED that Plaintiff's motion for preliminary injunction is GRANTED as follows: Defendants and their employees, agents, and all persons acting with them or on their behalf

1. Shall immediately de-identify themselves from Century 21, including taking down all signage (external and internal), billboards, insignias, and physical landmarks with the term "Century 21" contained therein;
2. Shall cease use of Century 21 marks;
3. Shall cease use of all stationary, letterhead, forms, business cards, or any other advertising object containing Century 21 marks;
4. Shall cease advertising themselves as a Century 21 franchise, including the removal of all signs or other identifying features containing Century 21 marks;
5. Shall delete or cause to be deleted any electronic advertisements using "Century 21" marks, including terminating operation of the url address located at www.c21visionrealty.com.

IT IS SO ORDERED.

Dated:   July 18, 2014                              _____
                                                   SENIOR  DISTRICT  JUDGE

---

anything which would indicate that Defendants … ever were an authorized Century 21 franchisee." The Court has tailored this order to omit such overreaching provisions.