UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTURY 21 REAL ESTATE, LLC,<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>RAMRON ENTERPRISES, et al.,<br><br>　　　　　Defendants. | Case No.: 1:14-cv-00788 - AWI - JLT<br><br>FINDINGS AND RECOMMENDATIONS GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT<br><br>(Doc. 20) |

　　　　Plaintiff Century 21 Real Estate, LLC seeks the entry of default judgment against defendants Ramrom Enterprises, also known as Century 21 Vision Realty, and Rueben Zamudio, for unfair business practices and infringement of Century 21's registered trademarks. (Doc. 20.) Defendants have not opposed this motion. The Court found the matter suitable for decision without a hearing, and the matter was taken under submission pursuant to Local Rule 230(g). (Doc. 23.) For the following reasons, the Court recommends Plaintiff's motion for default judgment be **GRANTED**.

**I.　　Background**

　　　　Plaintiff filed its complaint against Defendants on May 22, 2014, asserting it "has developed an expansive franchise system that provides its member offices with the marketing tools, resources, and know-how to operate an effective full-service real estate office ('CENTURY 21® System')." (Doc. 1 at 3, ¶ 10.) In addition, Plaintiff alleges that the company "utilizes and relies on a family of trade and service marks that provide unmatched brand identity for the Century 21 System ('CENTURY 21®

Marks'),"  which "are registered with the United States Patent and Trademark Office." (*Id.* at ¶¶ 10-11.)

According to Plaintiff, Defendants entered into a franchise agreement with Plaintiff for a ten-year term commencing June 1, 2010. (Doc. 1 at 4, ¶ 16.) Under the agreement, Defendants agreed to pay 6% of the gross revenue as royalty fees and 2% of the gross revenue toward a National Advertising Fund. (*Id.*, ¶ 17.) Defendants agreed that upon termination of the agreement, "Ramron would immediately and permanently discontinue use of all CENTURY 21® Mark[s]." (*Id.* at 5, ¶ 20.) (*Id.*) Plaintiff alleges that Defendants breached the franchise agreement, and Defendants are liable for trademark infringement; trademark counterfeiting; violating the Lanham Act, 15 U.S.C. § 1125; violating California Business and Professions Code § 14340; violating California Business and Professions Code § 17200; breach of contract; breach of guaranty; and breach of promissory notes. (*See generally* Doc. 1 at 7-14.)

Defendants were served with the complaint, but failed to respond within the time prescribed by the Federal Rules of Civil Procedure. Upon application of Plaintiff, default was entered against Defendants on July 14, 2014. (Docs. 14-15.) In addition, Plaintiff sought to enjoin Defendants from continuing the unauthorized use of its recognized word and design trademarks in violation of the Lanham Act. (Doc. 7.) The Court granted Plaintiff's request on July 22, 2014. (Doc. 14.)

Plaintiff now seeks the entry of default judgment against Defendants. (Doc. 20.) Plaintiff seeks an award of $174,323.80, and attorneys' fees and costs in the amount of $22,340.89, for a total award of $196,664.69. (Doc. 20-1 at 19.) In addition, Plaintiff seeks to permanently enjoin Defendants from any and all use of the Century 21® Marks, from advertising as a Century 21 franchisee, and "from doing anything which would indicate that Defendants, or any of them, are or ever were an authorized Century 21 franchisee." (Doc. 20-25 at 2; Doc. 20 at 2.)

**II.     Legal Standards Governing Entry of Default Judgment**

The Federal Rules of Civil Procedure govern the entry of default judgment. After default is entered because "a party against whom a judgment for relief is sought has failed to plead or otherwise defend," the party seeking relief may apply to the court for a default judgment. Fed. R. Civ. P. 55(a)-(b). Upon the entry of default, well-pleaded factual allegations regarding liability are taken as true, but allegations regarding the amount of damages must be proven. *Pope v. United States*, 323 U.S. 1, 22

(1944); *see also Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977). In addition, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of North Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)).

Entry of default judgment is within the discretion of the Court. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). The entry of default "does not automatically entitle the plaintiff to a court-ordered judgment. *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F.Supp.2d 1172, 1174 (C.D. Cal 2002), *accord Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986). The Ninth Circuit determined:

> Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). As a general rule, the issuance of default judgment is disfavored. *Id.* at 1472.

### III.     Plaintiff's Factual Allegations

The factual assertions of Plaintiff are taken as true because default has been entered against Defendant. *See Pope*, 323 U.S. at 22. Plaintiff alleges it is the exclusive licensee of several word and design marks registered with the United States Patent and Trademark Office, including Registration Nos. 1063488, 1085040, 2027670, and 1263774. (Doc. 1 at 3, ¶¶ 11-12.) Plaintiff uses these marks to provide "brand identity for the Century 21 System" of real estate brokerage franchisors. (*Id.*, ¶¶ 9-10.) As a result, the Century 21 marks are used "on goods, and in advertisements, education, training manuals, newsletters, global computer networks, radio programs, training services, awards, residential, commercial and mortgage brokerage services, relocation services, and the like." (*Id.* at 3-4, ¶ 13.)

According to Plaintiff, Defendants entered into a franchise agreement with Plaintiff for a ten-year term commencing June 1, 2010. (Doc. 1 at 4, ¶ 16.) Under the agreement, Plaintiff agreed "to grant a non-exclusive license to Defendants to utilize the Century 21® Marks and the Century 21® System," under which Defendants were given "the marketing tools, resources, and know-how to operate an effective full-service real estate office." (*Id.* at 3-4, ¶¶ 10, 17.) In return, Defendants agreed

to pay 6% of the gross revenue as royalty fees and 2% of the gross revenue toward a National Advertising Fund. (*Id.* at 4, ¶ 17.) Defendants agreed that upon termination of the agreement, "Ramron would immediately and permanently discontinue use of all CENTURY 21® Mark[s]." (*Id.* at 5, ¶ 20.) In addition, Defendants agreed that upon termination of the franchise agreement, they would:

> immediately refrain from representing that they are or ever were affiliated with Plaintiff, take affirmative action to remove any use of the CENTURY 21® Marks in connection with their business, advise all current clients they are no longer associated with Plaintiff, immediately cause the telephone company and business phone publisher (i.e., Yellow Pages) to remove their listings as Plaintiff's franchisee, and immediately cause any web masters or website to remove the CENTURY 21® Marks from their webpages, as well as to cease using any URL that contains the CENTURY21® Marks.

(*Id.*) The franchise agreement also contained a provision "permitting the recovery of attorneys' fees to any party prevailing in a legal proceeding in connection with the Agreement." (*Id.*, ¶ 21.)

Further, Plaintiff alleges Century 21 and Defendants "entered into two Account Balance Promissory Notes . . . in the principal amounts of $9,927.15 and $10,648.84, where by Plaintiff loaned the total amount of $20,575.99 to Defendants." (Doc. 1 at 6, ¶ 24.) Defendants agreed "to repay the loans in twenty- three monthly installments of $544.00 commencing July 1, 2012 and a final balloon payment of $9,919.29 on May 1, 2014." (*Id.*) Repayment of the principal balances could be accelerated upon termination of the franchise agreement. (*Id.*)

Defendants breached the franchise agreement by failing "to pay amounts owed under the Agreement, including royalty fees, and [National Advertising Fund] fees." (Doc. 1 at 5, ¶ 22.) As a result, "Plaintiff exercised its right to terminate the Agreement" on November 1, 2013. (*Id.* at 5, ¶ 23.) When the franchise agreement was terminated, the remaining principal balances on the promissory notes totaled $20,225.75, plus interest. (*Id.*, ¶ 24.)

Plaintiff reports that Defendants were informed that as of November 1, 2013, they were to cease use of the Century 21® Marks "on anything that would identify them with Plaintiff, including but not limited to signs, advertising, letterhead, and listings." (Doc. 1 at 6, ¶ 27.) Despite this, Defendants continued using the marks "in outdoor signage at their business address, on business cards, in MLS listings, as well as on Defendants' website www.c21visionrealty.com . . . [and] in connection with numerous other websites and business listings/directories." (*Id.*, ¶ 28.) Plaintiff alleges Defendants have ignored Century 21's "repeated demands to cease and desist" use of the marks. (*Id.* at 7, ¶ 29.)

## IV. Discussion and Analysis

Applying the factors articulated by the Ninth Circuit in *Eitel*, the Court finds the factors weigh in favor of granting Plaintiff's motion for default judgment.

### A. Prejudice to Plaintiff

The first factor considers whether the plaintiff would suffer prejudice if default judgment is not entered, and potential prejudice to the plaintiff weighs in favor of granting a default judgment. *See Pepsico, Inc.*, 238 F. Supp. 2d at 1177. Generally, where default has been entered against a defendant, a plaintiff has no other means by which to recover damages. *Id.*; *Moroccanoil, Inc. v. Allstate Beauty Prods.*, 847 F. Supp. 2d 1197, 1200-01 (C.D. Cal. 2012). Therefore, the Court finds Plaintiff would be prejudiced if default judgment is not granted.

### B. Merits of Plaintiff's claims and the sufficiency of the complaint

Given the kinship of these factors, the Court considers the merits of Plaintiff's substantive claims and the sufficiency of the complaint together. *See Premier Pool Mgmt. Corp. v. Lusk*, 2012 U.S. Dist. LEXIS 63350, at *13 (E.D. Cal. May 4, 2012). The Ninth Circuit has suggested that, when combined, these factors require a plaintiff to "state a claim on which the plaintiff may recover." *Pepsico, Inc.*, 238 F. Supp. 2d at 1175. Notably a "defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *DIRECTV, Inc. v. Huynh*, 503 F.3d 847, 854 (9th Cir.2007).

#### 1. Choice of law

As an initial matter, the Court must determine which state's laws govern the claims related to a breach of contract, because the franchise agreement and guaranty contain provisions that the agreements are to "governed by the laws of the State of New Jersey" and "be interpreted in accordance with New Jersey laws (statutory and otherwise)." (*See* Doc. 1 at 45, § 22.6; Doc. 1 at 50.)

The Ninth Circuit explained, "In a federal question action where the federal court is exercising supplemental jurisdiction over state claims, the federal court applies the choice-of-law rules of the forum state." *Paracor Fin., Inc. v. General Elec. Capital Corp.*, 96 F.3d 1151, 1164 (9th Cir. 1996). In California, "a freely and voluntarily agreed-upon choice of law provision in a contract is enforceable 'if the chosen state has a substantial relationship to the parties or the transaction or any other reasonable basis exists for the parties' choice of law.'" *1-800-Got Junk? LLC v. Super. Ct*., 189 Cal. App. 4th 500,

513-14 (2010) (quoting *Trust One Mortg. Corp. v. Invest Am. Mortg. Corp.*, 134 Cal. App. 4th 1302, 1308 (2005)).  If either test is met, "the court must next determine whether the chosen state's law is contrary to a *fundamental* policy of California." *Washington Mutual Bank v. Superior Court*, 24 Cal. 4th 906, 916 (2001) (emphasis in original).  If there is no conflict, the Court must enforce the parties' choice of law.  *Id.*  On the other hand, if there is a conflict, the Court must "determine whether California has a materially greater interest than the chosen state in the determination of the particular issue." *Id.* (internal quotation marks, citation omitted).

      Here, Century 21 maintains its principal place of business in the state of New Jersey.  (Doc. 1 at 2, ¶ 5.)  Therefore, the state has a substantial relationship to Plaintiff.  *See Nedlloyd Lines B.V. v. Super. Ct.,* 3 Cal. 4th 459, 467 (1992).  Further, this connection to New Jersey provides a reasonable basis for the selection of that state's laws. *Id.* at 467-68; *see also Consul, Ltd. v. Solide Enters., Inc.*, 802 F.2d 1143, 1147 (9th Cir. 1986) ("If one of the parties resides in the chosen state, the parties have a reasonable basis for their choice").  Under both New Jersey and California law, a breach of contract claim requires the plaintiff to establish the existence of a contract, performance by the plaintiff, breach by the defendants, and damages.  *Compare Nat'l Reprographics, Inc. v. Strom*, 621 F. Supp. 2d 204, 222 (D.N.J. 2008) *with Alcalde v. NAC Real Estate Invs. & Assignments*, Inc., 316 Fed. App'x 661, 662 (9th Cir. 2009); *First Comm. Mortgage Co. v. Reece*, 89 Cal. App. 4th 731 (2001)); *see also Klay v. Humana, Inc.*, 382 F.3d 1241, 1263 (11th Cir. 2004) ("[a] breach is a breach is a breach, whether you are on the sunny shores of California or enjoying a sweet autumn breeze in New Jersey").  Thus, because there is no conflict between with California policy or contract law, Plaintiff's breach claims are analyzed under New Jersey law.

          2.      Breach of contract

      Under New Jersey law, a plaintiff must show "(1) a contract; (2) a breach of that contract; (3) damages flowing therefrom; and (4) plaintiff performed its own contractual duties." *Nat'l Reprographics, Inc.*, 621 F. Supp. 2d at 222.  Here, Plaintiff has established the existence of the franchise agreement, through which Defendants agreed to pay royalties and advertising fees to Plaintiff.  Plaintiff performed its duties under the franchise agreement by providing Defendants a non-exclusive license to use the Century 21® marks.  (Doc. 1 at 8, ¶ 37.)  However, Defendants breached the

agreement through their failure to pay the royalty and advertising fees. (*Id.* at 5-6, ¶ 22.) Further, Plaintiff and Defendants entered into two promissory notes through which Plaintiff loaned $20.575.99 to Defendants. (*Id.* at 6, ¶ 24.) Defendants failed to make the agreed upon payments of the loan, or to pay the amount due upon termination of the franchise agreement. (*Id.*) As a result, Plaintiff has established the elements of a claim for breach of contract.

### 3. Breach of guaranty

In New Jersey, to establish the breach of a guaranty, the plaintiff must show: "1) execution of the guarantee by the guarantor (i.e. that it was the defendant who signed the guarantee); 2) the principal obligation and terms of the guaranty; 3) the lender's reliance on the guaranty in extending monies to the borrower; 4) default by principal obligator; 5) written demand for payment on the guarantee; [and] 6) failure of the guarantor to pay upon written demand." *United States on behalf of Small Bus. Admin. v. DelGuercio*, 818 F. Supp. 725, 727-28 (D.N.J. 1993).

Here, it is undisputed that "Zamudio signed a Guaranty of Payment and Performance," through which he "personally guaranteed the payment and performance of Ramrom's obligations under the Agreement." (Doc. 1 at 5, ¶ 18.) Under the "Guaranty of Payment and Performance," Zamudio guaranteed "the prompt payment and performance" of the obligations under the franchise agreement, "including payment of the initial franchise fee, all Royalty Fees, advertising fund contributions, charges for manuals, supplies, materials, services and products furnished by [Century 21], audit fees, assignment fees, attorneys fees, referral fees, obligations to indemnify and other such charges, fees and assessments under the Agreement." (*Id.* at 49.) The Guaranty provides that its purpose was "in order to induce" Century 21 to accept Ramron as a franchisee. (*Id.*) As a result, Plaintiff establishes reliance upon the guaranty. Further, as discussed above, Ramron did not comply with the terms of the franchise agreement through the failure "to pay amounts owed under the Agreement," including the royalty fees and National Advertising Fund fees. (Doc. 1 at 5, ¶ 22.) Plaintiff notified Defendants of the default, and made a demand for payment. (*Id.* at 5-6 and 14, ¶¶ 22, 81.) Zamudio failed to cure the defaults by making the demanded payments. (*Id.* at 6, ¶ 23.)

In light of these facts, Plaintiff carries its burden to establish a claim for a breach of guaranty under New Jersey law against defendant Zamudio.

7

### 4. Trademark infringement and unfair competition

A trademark is "any word, name, symbol, or device, or any combination thereof . . . used by a person . . . to identify and distinguish his or her goods." 15 U.S.C. § 1127. To prevail on trademark infringement claim under the Lanham Act, a plaintiff "must prove: (1) that it has a protectable ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion." *Dep't of Parks & Rec. v. Bazaar Del Mundo Inc.*, 448 F.3d 1118, 1124 (9th Cir. 2006). Although a claim for unfair competition is distinct from trademark infringement, "the elements are essentially identical and the same evidence establishes both claims." *Philip Morris USA Inc. v. Liu*, 489 F.Supp.2d 1119, 1123 (C.D. Cal. 2007); *see also Century 21 Real Estate LLC v. All Professional Realty, Inc.,* 889 F. Supp. 2d 1198, 1232 (E.D. Cal. 2012) *(*explaining the elements of a federal unfair competition claim are "identical to the federal trademark infringement claim, with the exception that the trademark need not be registered").

#### a. Valid and protectable ownership interest

Previously, this Court observed that "Plaintiff has made a judicially noticeable showing of federal registration of its trademarks; United States Trademark Registration Nos. 1063488, 1085040, 2027670, and 1263774." (Doc. 16 at 4.) As a result, the Court determined, "Plaintiff has demonstrated a protectable ownership interest in the word mark 'Century 21' and multiple design variations bearing those words." (*Id.*)

#### b. Likelihood of consumer confusion

"The 'likelihood of confusion' inquiry generally considers whether a reasonably prudent consumer in the marketplace is likely to be confused as to the origin or source of the goods or services bearing one of the marks or names at issue in the case." *Rearden*, 683 F.3d at 1209 (citing, *e.g., Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1140 (9th Cir. 2002)). In general, the Court considers the following factors to gauge the likelihood of confusion: "(1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines." *Id.* (citing *AMF, Inc. v. Sleekcraft Boats*, 559 F.2d 341, 348-49 (9th Cir. 1979). Evaluating the marks of

Century 21, this Court found that "[t]he applicable *Sleekcraft* factors point in favor of potential customer confusion." (Doc. 16 at 7.)

Because Century 21 has established a protectable ownership interest and "demonstrated a likelihood of customer confusion" (*see* Doc. 16 at 5-7), Plaintiff has established its claims for trademark infringement and unfair competition in violation of the Latham Act. *See Dep't of Parks & Recreation*, 448 F.3d at 1124.

Notably, a plaintiff who establishes claims under the Latham Act also satisfies the elements for claims of common law trademark infringement and unfair competition under California and New Jersey state laws. *See Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1221 (9th Cir. 2012) (claims for trademark infringement and unfair competition under California law are "subject to the same legal standards" as Lanham Act claims); *J & J Snack Foods Corp. v. Earthgrains* Co., 220 F. Supp. 2d 358, 374 (D.N.J. 2002) ("the elements for a claim for trademark infringement under the Lanham Act are the same as the elements for a claim of unfair competition under the Lanham Act and for claims of trademark infringement and unfair competition under New Jersey statutory and common law"). Thus, Plaintiff establishes trademark infringement and unfair competition under state law.

Because Plaintiff has stated trademark infringement and unfair competition claims under both federal and state law, the second and third *Eitel* factors weigh in favor of the entry of default judgment. *See Pepsico, Inc.*, 238 F. Supp. 2d at 1175.

**C.     Sum of money at stake**

In considering this factor, the Court "must consider the amount of money at stake in relation to the seriousness of Defendants' conduct." *Pepsico, Inc.*, 238 F.Supp.2d at 1176. Thus, the Court must "assess whether the recovery sought is proportional to the harm caused by [a] defendant's conduct." *Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 921 (N.D. Cal. 2010).

Plaintiff seeks an award totaling "174,323.80—which includes $48,316.54 for amounts due and owing under the Franchise Agreement and Notes, $88,024.26 for liquidated damages under the Franchise Agreement . . . [and] trebled outstanding royalty and franchise fees in the amount of $37,983.00 for Defendants' continued trademark infringement." (Doc. 20-1 at 19.) The amount requested is proportional to Defendants' conduct, given the breaches of the franchise agreement and

their continued use of Century 21 word and design marks. Consequently, this factor favors the entry of default judgment.

### D. Possibility of dispute concerning material facts

Here, there is little possibility of dispute concerning material facts because (1) based on the entry of default, the Court accepts allegations in Plaintiff's Complaint as true and (2) though properly served, Defendants failed to appear. *See Pepsico, Inc.*, 238 F.Supp.2d at 1177; *see also Elektra Entm't Group, Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists"). Therefore, this factor does not weigh against default judgment.

### E. Whether default was due to excusable neglect

Generally, the Court will consider whether Defendants' failure to answer is due to excusable neglect. *See Eitel*, 782 F.2d at 1472. However, Defendants were served with the Summons and Complaint in this action, and failed to respond. (*See* Docs. 9, 10.) It is unlikely that Defendants' actions were the result of excusable neglect. *See Shanghai Automation Instrument Co., Ltd. v. Kuei*, 194 F.Supp.2d 995, 1005 (N.D. Cal. 2001) (finding no excusable neglect where the defendants were served and failed to respond). This factor does not weigh against default judgment.

### F. Policy disfavoring default judgment

As noted above, default judgments are disfavored because "[c]ases should be decided on their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. Here, the policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits does not weigh against default judgment because Defendants' failure to appear before the Court and defend in this action makes a decision on the merits impractical.

## V. Damages

Plaintiff seeks damages in the amount of 174,323.80, which includes unpaid franchise fees, amounts due under the promissory notes, liquidated damages pursuant to the franchise agreement terms, and damages for Defendants' trademark infringement. (*See* Doc. 20-1 at 15-18.)

### A. Unpaid fees and amounts under the notes

Under the franchise agreement, Defendants agreed to pay Plaintiff to pay 6% of the gross

revenue as royalty fees and 2% of the gross revenue toward a National Advertising Fund.  (Doc. 1 at 4, ¶ 17; Doc. 1 at 24-27.)  Further, Defendants agreed under the promissory notes "to repay the loans in twenty- three monthly installments of $544.00 commencing July 1, 2012 and a final balloon payment of $9,919.29 on May 1, 2014."  (*Id.* at 6, ¶ 24.)  Plaintiff has produced a Custom Account Status Report, which "details the amount owed by Defendants to Century 21 for past due royalty fees and amounts owed under the Notes."  (Doc. 20-1 at 15, citing Doc. 20-9.)  The Custom Account Status Report indicates Defendants owe a total of $48,316.54 in monthly royalty fees, National Advertising Fund contributions, and promissory note payments.  (Doc. 20-3 at 5, Bertet Decl. ¶ 14; Doc. 20-9 at 2-7.)  Accordingly, it is recommended that Plaintiff's request for Defendants' unpaid fees and loan payments under the franchise agreement and promissory notes be **GRANTED** in the amount of $**48,316.54**.

### B. Liquidated damages

The franchise agreement contains clause providing that Plaintiff was entitled to liquidated damages if Defendants breached the agreement and caused an "early termination" of the agreement. (Doc. 1 at 40-41.)  Specifically, the agreement provides:

> If an "early termination" of this Agreement occurs (which will mean any termination of the Agreement before the Expiration Date, other than a mutual termination under Section 16.2.1), you will immediately pay us "liquidated damages." The parties acknowledge and agree that it would be impracticable or extremely difficult to calculate the actual amount you would have been obligated to pay as Royalty Fees, NAF contributions, and any other fees due under this Agreement through the Expiration Date and that the following method of calculation represents a fair and reasonable estimate of our damages: Liquidated damages will be equal to the combined monthly average of Royalty Fees, NAF contributions, and any other fees under this Agreement (without regard to any fee waivers, CIB or other reductions) payable from the Opening Date through the date of early termination, multiplied by the lesser of (i) 36 or (ii) the number of full months remaining in the Term. The present value of the total calculated at a discount rate of 8%, assuming payment is made at the end of each month, will constitute our liquidated damages.

(Doc. 1 at 40-41, § 16.7.2.)

Under New Jersey state law, provisions for stipulated damages such as this are enforceable when they are "reasonable under the totality of the circumstances."  *Metlife Capital Financial Corp. v. Washington Ave. Assoc. L.P.*, 159 N.J. 484, 494-95 (N.J. 1999).  On the other hand, provisions for stipulated damages are unreasonable and unenforceable when designed as "penalties" to punish the defendants or to deter breaches of contract.  *Id.* at 493-94.  A liquidated damages provision is

"presumptively reasonable and the party challenging the clause bears the burden of proving its unreasonableness." *Id.* at 496.  Here, Defendants have not appeared and do not challenge the reasonableness of the liquidated damages provision.  Further, the provision is not designed as a penalty, but rather a method to calculate "a fair and reasonable" amount of damages.  (*See* Doc. 1 at 41.)  Consequently, the Court finds the liquidated damages provision is enforceable.

According to Jacqueline Bertet, the Senior Director of Real Estate Financial Services for Century 21 Real Estate, Defendants owe "a monthly average of $3,105.88 for fees under the Franchise Agreement."  (Doc. 20-3 at 5, Bertet Decl. ¶ 12.)  Further, Ms. Bertet reports there were 79 months remaining under the franchise agreement with Defendants.  (*Id.*)  The liquidated damages clause provides that the monthly average should be "multiplied by the lesser of (i) 36 or (ii) the number of full months remaining in the Term."  (Doc. 1 at 41.)  Thus, the liquidated damages are calculated by multiplying $3,105.88 by 36, and applying a 8% discount for the present value.  (*Id.*; Doc. 20-3 at 5, Bertet Decl. ¶ 12.)  Using this method of calculation, Ms. Bertet reports the liquidated damages total $88,024.26. (*Id.*)

Because the liquidated damages provision is enforceable, the Court recommends Plaintiff's request for liquidated damages be **GRANTED** in the amount of $**88,024.26**.

C.     **Damages under the Lanham Act**

The franchise agreement provides that the minimum monthly royalty fee was $500.00, and the minimum monthly National Advertising Fund contribution was $651.00.  (Doc. 1 at 26, § 7.1.14; Doc. 1 at 28, § 8.2.)  Therefore, Plaintiff asserts that "at a minimum, Defendants owe $1,151 to Century 21 for each month of infringement following the termination agreement," which totals $12,661.00.  (Doc. 20-1 at 17.)  However, Plaintiff seeks "an award of damages equal to three times its actual damages during the time of Defendants [sic] on-going infringement of its marks between at least November 1, 2013 and the present time."  (Doc. 20-1 at 16, citing 15 U.S.C. § 1117(b); *Nintendo v. America, Inc. v. Dragon Pacific Int'l*, 40 F.3d 1007, 1010 (9th Cir. 1994).

Plaintiff asserts the award of treble damages is appropriate because "Defendants are 'holdover' franchisees that refused to cease use of the Century 21® Marks after being advised by Century 21 of the termination of the Franchise Agreement."  (Doc. 20-1 at 16.)  Plaintiff reports, "Defendants were

informed numerous times after the termination of the franchise that they needed to de-identify and that they were not permitted to use the Century 21 Marks." (*Id.* at 16-17.) Further, Plaintiff asserts that Defendants continued their trademark infringement "even after the entry of the preliminary injunction." (*Id.* at 17.) Plaintiff concludes that "since it is . . . beyond dispute that Defendants were willfully infringing Century 21's marks during this time, Century 21 is entitled to treble damages, for a total of at least $37,983.00." (*Id.* at 18.)

Significantly, though Plaintiff asserts that the damages should be increased due to Defendants' willful infringement, the Ninth Circuit has determined since *Nintendo* that the Court may not enhance damages to punish a defendant for acting willfully under the Lanham Act. In *Skydive Arizona, Inc. v. Quattrocchi*, 673 F.3d 1105, 1114 (9th Cir. 2012), the Court explained:

> The plain language of the Lanham Act permits a district court, in its discretion, to enter judgment "for any sum above the amount found as actual damages, not exceeding three times such amount." 15 U.S.C. § 1117(a). "If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. *Such sum in either of the above circumstances shall constitute compensation and not a penalty.*" *Id.* (emphasis added). Thus, although a judge or jury may award up to triple the amount of lost profits, actual damages and costs to compensate a mark holder, the Lanham Act has been construed to expressly forbid the award of damages to punish an infringer. *Id.; BASF Corp. v. Old World Trading Co.*, 41 F.3d 1081, 1096 (7th Cir.1994).

The Court noted that the issue was not "whether [the defendant's] willful infringement justified the district court's enhancement," but "whether the district court abused its discretion in enhancing [the] actual damages to punish [the defendant]." *Skydive Arizona*, 673 F.3d at 1114. The Court determined the entry of an award for punishment is improper:

> In a Lanham Act case, to penalize defendants for "opprobrious conduct" is an abuse of discretion. *Jurgens v. McKasy*, 927 F.2d 1552, 1564 (Fed.Cir.1991) (finding the district court abused its discretion under the Lanham Act when it cited both deterrence and penalizing rationales for trebling damages against a willful infringer). Indeed, "enhancement [of damages] is only available to ensure that the plaintiff receives compensation." *BASF Corp.*, 41 F.3d at 1096.

*Id.* Consequently, the Court is unable to award treble damages solely to penalize Defendants for their willful infringement of Plaintiff's word and design marks.

On the other hand, the Court notes that Plaintiff made its calculations for an award of damages based upon the minimum monthly royalty fee and monthly National Advertising Fund contribution.

13

Pursuant to the terms of the franchise agreement, Defendants were responsible for National Advertising Fund contributions up to $1,508.00. (Doc. 1 at 28, § 8.2.) The evidence before the Court indicates that Defendants were frequently billed amounts exceeding the minimums. (*See, e.g.* Doc. 20-9 at 4.) Given the inability Plaintiff to calculate the defendants' profits and the 6% of gross revenue owed as royalty fees, the Court finds the requested award is appropriate to ensure that Plaintiff receives compensation for the unauthorized use of its word and design marks. Accordingly, the Court recommends Plaintiff's request for damages under the Lanham Act be **GRANTED** in the amount of $**37,983.00**.

**VI.     Injunctive Relief**

Plaintiff seeks "to permanently enjoin Defendants from further use of the Century 21® Marks." (Doc. 20-1 at 19.) Further, Plaintiff requests that the Court enjoin "Defendants and their employees, agents, and all persons acting with them or on their behalf . . . from advertising as a Century 21 franchisee;" using the Century 21 system, "including, but not limited to, operating manuals, training manuals, sales manuals and aids, listing films and books, advertising and promotional materials, and all technology products, and all films, cassettes, and instructions manuals . . . that were delivered to Defendants pursuant to the Franchise Agreement;" and from doing anything which would indicate that Defendants "ever were an authorized Century 21 franchisee." (Doc. 20-25 at 2.)

Under the Lanham Act, a district court has the "power to grant injunctions, according to the principles of equity and upon such terms as the court deems reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office." 15 U.S.C. § 1116(a). "Actual irreparable harm must be demonstrated to obtain a permanent injunction in a trademark infringement action." *Herb Reed Enterprises, LLC v. Florida Entm't Mgmt., Inc.*, 736 F.3d 1239, 1249 (9th Cir. 2013) (citing *Flexible Lifeline Sys. v. Precision Lift, Inc.*, 654 F.3d 989, 998 (9th Cir. 2011) and *Reno Air Racing Assoc., v. McCord*, 452 F.3d 1126, 1137-38 (9th Cir. 2006)). Injunctive relief is appropriate when a party establishes "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *see also MAI Systems Corp. v. Peak Computer, Inc.*,

991 F.2d 511, 520 (9th Cir. 1993) (explaining that, in general, "a permanent injunction will be granted when liability has been established and there is a threat of continuing violations").

The Ninth Circuit has determined "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by the threat of continuing infringement." *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988). Further, in a trademark infringement action, "once the plaintiff establishes a likelihood of confusion, it is ordinarily presumed that the plaintiff will suffer irreparable harm if injunctive relief is not granted." *Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 612 (9th Cir. 1989). Defendants' violations were despite the knowledge that Century 21 terminated the franchise agreement and that Defendants no longer had permission to use the word and design marks. Finally, an injunction is in the public interest because "[t]he public has an interest in avoiding confusion between two companies' products." *Internet Specialties West, Inc. v. Milon-DiGiorgio Enters.*, Inc., 559 F.3d 985, 993 n. 5 (9th Cir. 2009). In addition, "the public has an interest in the enforcement of federal statutes" such as the Lanham Act. *See CoxCom, Inc. v. Chaffee,* 536 F.3d 101, 112 (1st Cir. 2008). Consequently, injunctive relief is appropriate to prevent Defendants from continued trademark violations and unfair competition.

## VII. Attorneys' Fees

Plaintiff seeks an award of attorneys' fees and costs in pursuant to the terms of the franchise agreement and Section 35(a) of the Lanham Act. (Doc. 20-2 at 18, citing Garner Decl. ¶ 27.) Under New Jersey law, "a party may agree by contract to pay attorneys' fees." *N. Bergen Rex Transp. Inc. v. Trailer Leasing Co.,* 158 N.J. 561, 569-70 (1999). Here, the franchise agreement provides:

> [Century 21] will be entitled to collect, in addition to any award of damages or injunctive relief, our costs in enforcing our rights under this Agreement against you, including reasonable attorneys' fees, court costs, expert fees, costs of investigation, and other litigation expenses.

(Doc. 1 at 45, § 22.11.) Because Plaintiff has prevailed in this action seeking enforcement of the franchise agreement and termination of Defendants' use of the Century 21 marks, it is entitled to its fees and expenses under the franchise agreement, which totaled $22,340.89. (Doc. 20-13, Garner Decl. ¶ 17; *see also* Doc. 20-24 at 1-31.)

Moreover, an award of attorney fees is also available under the Lanham Act, which permits the Court to "award reasonable fees to the prevailing party" in "exceptional" cases. 15 U.S.C. § 1117(a). The Ninth Circuit has determined that a case is "exceptional" when "the acts of infringement can be characterized as malicious, fraudulent, deliberate, or willful." *Rio Properties, Inc. v. Rio Int's Interlink*, 284 F.3d 1007, 1023 (9th Cir. 2002). In *Rio Properties*, the Court held that an award of attorneys' fees under the Lanham Act was appropriate because, "by entry of default judgment, the district court determined, as alleged in RIO's complaint, that [defendant]'s acts were committed knowingly, maliciously, and oppressively, and with an intent to injure RIO." *Id.* Similarly, in *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008), the plaintiff alleged the defendant acted willfully and the district court entered default. The Court found the entry of default "sufficiently establishes [plaintiff]'s entitlement to attorneys' fees under the Lanham Act." *Id.* Because Plaintiff alleged Defendants acted willfully (*see, e.g.*, Doc. 1 at 7 ¶ 29) and the Court has entered default (Doc. 15), the award of fees is also appropriate pursuant to the Lanham Act.

## VIII.  Findings and Recommendations

The *Eitel* factors weigh in favor of granting default judgment, and the entry of default judgment is within the discretion of the Court. *See Aldabe*, 616 F.2d at 1092. Based upon the foregoing, **IT IS HEREBY RECOMMENDED**:

1. Plaintiff's application for default judgment (Doc. 20) be **GRANTED**;
2. Damages be **AWARDED** in the amount of $**174,323.80**;
3. Plaintiff's request for attorneys' fees be **GRANTED** in the amount of $**22,340.89**; and
4. Defendants and their employees, agents, and all persons acting with them or on their behalf, be permanently restrained and enjoined from:
    a. Any and all use of the CENTURY 21® Marks including, but not limited to, the proprietary mark "Century 21", all similar names and marks and any name or mark containing the designation "Century 21," or any other name, designation or mark, or similar colors or lettering indicating or tending to indicate that Defendants, or any of them, is an authorized Century 21 franchisee, including but not limited to any websites;

        b.        Advertising as a Century 21 franchisee;

        c.        Using the Century 21® Marks system, including, but not limited to, operating manuals, training manuals, sales manuals and aids, listing films and books, advertising and promotional materials, and all technology products, and all films, cassettes, and instructions manuals which are part of Century 21's programs, that were delivered to Defendants pursuant to the Franchise Agreement; and

        d.        Doing anything that would indicate Defendants were an authorized Century 21 franchise; and

5.     Judgment be entered in favor of Century 21 Real Estate, LLC and against defendants Ramrom Enterprises, also known as Century 21 Vision Realty, and Rueben Zamudio.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within fourteen days of the date of service of these Findings and Recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991); *Wilkerson v. Wheeler*, 772 F.3d 834, 834 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:   **February 9, 2015**                  **/s/ Jennifer L. Thurston**
                                                              UNITED STATES MAGISTRATE JUDGE